**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SHIRLEY WATCHER

    Plaintiff,

          v.

THE POTTSVILLE AREA
EMERGENCY MEDICAL SERVICE,
INC.,

    Defendant.

CIVIL ACTION No. 3:00-CV-1123

(JUDGE CAPUTO)

**<u>MEMORANDUM</u>**

Presently before the Court is Plaintiff Shirley Watcher's Petition for Attorneys' Fees and Costs (Doc. 171) and Plaintiff's Supplemental Petition to Mold the Verdict Relative to Attorney's Fees and Costs (Doc. 231-1).  For the reasons set forth below, Plaintiff's petition will be granted in part and denied in part.

**BACKGROUND**

Plaintiff Shirley Watcher brought an action against Pottsville Area Emergency Medical Service, Inc., (hereinafter "PAEMS") alleging sex discrimination under Title VII, age discrimination under the Age Discrimination in Employment Act ("ADEA"), discrimination under the Pennsylvania Human Relations Act ("PHRA") and various other state law claims.  (Mem. & Order, Oct. 5, 2004, Doc. 227, at 1.)  After a jury trial, a verdict was rendered in favor of Plaintiff on her claims of age discrimination, in the form of a hostile work environment, under both the ADEA and the PHRA, but the jury found that Plaintiff was not fired because of her age and also returned a verdict in favor of Defendant PEMS on the sex discrimination claim.  (*Id.*)  The jury also found PEMS's

conduct to have been wilful within the meaning of the ADEA.  The jury awarded Plaintiff thirty thousand dollars ($30,000) for emotional pain and suffering and eighty-five thousand and twenty-seven dollars ($85,027) for back pay.  (*Id.*)  An amount equal to the back pay award was later added as liquidated damages, but after post-trial motions, both the back pay and liquidated damages were eliminated.  (*Id.* at 2; Mem. & Order, Oct. 5, 2004, Doc. 225; Amended Judgment, Doc. 226.)  Plaintiff and Defendant each appealed portions of post-trial rulings, and the Third Circuit Court of Appeals affirmed each of the challenged orders.  *Watcher v. Pottsville Area Emergency Med. Servs., Inc.*, 248 Fed. Appx. 272 (3d Cir. 2007).

Plaintiff now requests the Court award her counsel attorneys' fees in the amount of five hundred and one thousand, one hundred seventy-two dollars and fifty cents ($501,172.50) as well as costs.  (Pl.'s Supplemental Pet. to Mold the Verdict Relative to Att'ys Fees and Costs [hereinafter "Supp. Pet."], Doc. 231-1 ¶ 7.)  This motion is fully briefed and ripe for disposition.

## DISCUSSION

### I. Appropriateness of Awarding Attorneys' Fees and Costs

Both the ADEA and the PHRA provide that attorneys' fees and costs are recoverable from an employers who have unlawfully discriminated in violation of either statute.  The ADEA incorporates by reference § 16(b) of the Fair Labor Standards Act of 1938, which provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and

2

costs of the action." 29 U.S.C. § 216(b); *see* 29 U.S.C. § 626(b). An award of attorneys' fees and costs under the PHRA is discretionary. *See* 43 Pa. Stat. Ann. § 962(c)(4)(c.2) ("[T]he court may award attorney fees and costs to the prevailing plaintiff.").

Defendant submits that Plaintiff's petition is "so intolerably inflated and outrageously excessive, including literally hundreds of submissions to which she is not entitled," that the Court should deny her petition in its entirety. (Def.'s Objections in Resp., Doc. 234-1, at 2-6.) However, a plaintiff is considered a prevailing party for attorney's fees purposes if she succeeds "on any significant issue in litigation which achieves some of the benefits the parties sought in bringing the suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992). Because Plaintiff successfully proved at trial that Defendant did unlawfully discriminate in violation of the ADEA and the PHRA, I will award attorneys' fees and costs after determining the appropriate amount.

The initial estimate of the appropriate fee "is properly calculated by multiplying the number of hours reasonably expended on litigation times a reasonable hourly rate." *Blum v. Stetson*, 465 U.S. 886, 888 (1984). This amount is known as the "lodestar" figure, which is presumed to be the reasonable fee, but may require subsequent adjustment. *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 310 (3d Cir. 2008).

## II. Hourly Rates

_____In calculating the reasonable rate, the Court looks to the prevailing market rates in the relevant community. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001). The Court should consider the experience and skill of the prevailing party's

3

attorney, and compare the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).  The prevailing party bears the burden of demonstrating that the requested hourly rates are reasonable.  *Id.*  However, where "the plaintiff has met his prima facie burden under the community market rate lodestar test, and the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward."  *Ridley v. Costco Wholesale Corp.*, 217 Fed. Appx. 130, 139 (3d Cir. 2007) (quoting *Washington v. Phila. County Ct. Com. Pl.*, 89 F.3d 1031, 1036 (3d Cir. 1996)).

Plaintiff requests the following hourly rates for her counsel at the firm Zarwin, Baum, DeVito, Kaplan, O'Donnell & Schaer P.C, which is located in Philadelphia.  For Joseph M. Toddy, who specializes in complex litigation; has represented employees, state agencies, and employers in many employment discrimination cases; and has been practicing law since 1984, Plaintiff requests two hundred seventy-five dollars ($275). (Verification of Joseph M. Toddy, Ex. A to Doc. 171 ¶¶ 1-7.)  Plaintiff also requests for Jay Solnick, who left the firm in 2000 and has been practicing law since 1994, one hundred seventy-five dollars ($175); for Michael Misher, who has been practicing since 1996, one hundred eighty dollars ($180); for Michelle Sergeant Kaas, who left the firm in 2001 and has been practicing since 1997, one hundred sixty dollars ($160); and for James Keating, who has been practicing since 2002, one hundred fifty dollars ($150). (*Id.* ¶¶ 9-19.)  For the work of law clerks at the firm, Thomas Kelly, Robert Malzel, and Michael Liggeria, Plaintiff requests an hourly rate of ninety dollars ($90).  (*Id.* ¶ 20;

Supplemental Verification of Joseph M. Toddy, Ex. A to Doc. 231-1 ¶ 3.)  Finally, for

Ryan Harmon, who has been practicing law since 2003, Plaintiff requests a rate of ninety

dollars ($90) for the work he did while a law clerk, and a rate of one hundred fifty dollars

($150) for the work he did, subsequent to the entry of the jury verdict, as an attorney at

the firm.  (Verification, Ex. A to Doc. 171 ¶ 20; Supplemental Verification, Ex. A to Doc.

231-1 ¶¶ 1-2.)

        In support of these rates, Plaintiff submitted two (2) verifications of Attorney Toddy,

stating that he has billed his clients at an hourly rate of two hundred seventy-five dollars

($275) per hour since January 1, 1998, listing the federal and state courts before which

he is admitted to practice, and describing his experience in employment discrimination

and other areas.  (Ex. A to Doc. 171 ¶ 1-7.)  The verification names seven (7) other

attorneys with comparable experience who practice within the Third Circuit and who bill at

an hourly rate of at least two hundred seventy-five dollars ($275).  (*Id.* ¶ 8.)  Plaintiff also

submitted the verification of one of those attorneys, Dennis L. Friedman, who states that

he charges three hundred dollars ($300) per hour and lists other employment attorneys

whose hourly billing rate is similar to his.  (Ex. 1 to Doc. 171.)  He also attached the

Community Legal Services hourly fee schedule, which was most recently updated in

October 2001, and explains that this schedule is created by a board comprising a

representative cross section of the Philadelphia bar and is based on a survey of the rates

of private law firms and individual practitioners within the Third Circuit.  (*Id.* ¶ 16.)

Friedman also cites to a decision by the Third Circuit Court of Appeals which accepted

that schedule as a "fair reflection of the prevailing market rates in Philadelphia."  (*Id.* ¶ 19

(citing *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001)).  That schedule

5

provides ranges of hourly rates to correspond with various levels of legal experience, as well as ranges of hourly rates for law students and paralegals.  (*See* Ex. 2 to Doc. 171.) The requested rates for each attorney and law clerk listed above are approximately in line with the fee schedule.

Based on the foregoing submissions, Plaintiff has met her prima facie burden of demonstrating that the requested hourly rates are reasonable in light of the prevailing market rates in the relevant legal community.  Defendant argues that Plaintiff's fee petition lists a large amount of time her counsel spent on general research, "not in response to particular motions or the litigation process, but to educate themselves on the state of the law," and therefore argues that counsel's hourly rates should be lowered.  But Defendant has not suggested alternate rates or produced evidence of what less experienced attorneys charge; thus it is more appropriate to address Defendant's concern in the following step, the reasonableness of hours expended.  Plaintiff's rates will be accepted as reasonable.

### III. Reasonableness of Hours Expended

The Court must also determine whether the number of hours spent on the litigation was reasonable.  The Court "should review the time charged, decide whether the hours claimed were reasonably expended for each of the particular purposes described, and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (citations omitted).  The general guide for reasonableness is that "[h]ours that are not

6

properly billed to one's *client* are not properly billed to one's *adversary* pursuant to statutory authority.*" Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)(citation omitted)*.*

To meet her initial burden of proving that requested fees are reasonable, Plaintiff must submit evidence of the hours worked that is "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Phila. County Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996). To be specific enough, a petition must be "fairly definite ... as to the hours devoted to general activities, e.g., pretrial discovery, settlement negotiations .... However, it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted." *Id.* at 1037-38 (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990)).  Further, there is no requirement "that records be kept by task - e.g., for each motion, issue or part of the case." *Id.* at 1038.

Once Plaintiff has met this initial burden, "[t]he party opposing the fee award then has the burden to challenge the reasonableness of the requested fee, by affidavit or brief with sufficient specificity to give the fee applicant notice of the objection." *E.E.O.C. v. Fed. Express Corp.*, – F. Supp. 2d –, Civ. A. No. 1:02-CV-1194, 2005 WL 6073699, at *15 (M.D. Pa. Jan. 18, 2005) (Kane, J.).  "Once the adverse party raised objections to the fee request, the district court has considerable discretion to adjust the award in light of those objections." *Id.*  The Court has categorized the fees that follow by comparing Defendant's lists and descriptions of charges to which it objects with Plaintiff's lists and descriptions of hours expended in her fee petition.

### A. General Legal Research

Defendant contests fees from Exhibit B of Plaintiff's petition for "legal research not relative to responding or replying to substantive motions (or the issue of Laubach's criminal conviction) but necessary to practicing as an employment law attorney charging $275 per hour." (Ex. A to Def.'s Objections, Doc. 234-2, at 17.) Generally, "[c]ompensable activities include the preparation of filing the lawsuit, *background research*, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing a favorable judgment, and travel among other things." *DirecTV, Inc. v. Clark*, Civil No. 03-2477 (JBS), 2007 WL 2212608, at *4 (D.N.J. July 27, 2001) (emphasis added). Moreover, 79.6 hours billed for "general research," has been approved as reasonable even though that research was not attributed to "any particular pleading or trial preparation." *See Garner v. Meoli*, No. Civ. A. 96-1351, 1998 WL 560377, at *4 (E.D. Pa. Aug. 31, 1998).

Defendant cites caselaw which states that "[h]ours spent reading background cases or familiarizing oneself with the general area of law should be absorbed in the firms' overhead and not be billed to the client." *Gudenkauf v. Stauffer Commc'ns, Inc.*, 953 F. Supp. 1237, 1243 (D. Kan 1997) (citing *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987). It is true that courts have reduced the amount of time recoverable for background research of a very general nature. For instance, in *American Lung Ass'n v. Reilly*, 144 F.R.D. 622, 627-28 (E.D.N.Y. 1992), the court allowed compensation for only ten (10) out of 22.9 hours that attorneys who

8

"characterize[d] themselves as experts in the field of federal environmental law" spent familiarizing themselves with the Clean Air Act and the Federal Rules of Civil Procedure. And in *Spell v. McDaniel*, 852 F.2d 762, 767 (4th Cir. 1988), the court rejected twenty (20) hours of work that counsel "purportedly versed in appellate procedure" claimed to have spent "reviewing the relevant procedures on this procedurally unexceptional appeal."

Plaintiff responds that "[c]ontrary to Defendant's allegation, no general legal research was conducted for this case.  Moreover, the charges submitted for legal research were for time spent reviewing recent case law on issues raised during the litigation of this case."  (Pl.'s Reply Br. to Def.'s Objections in Resp. to Pl.'s Itemized Billing of Attorney's Fees & Costs [hereinafter "Pl.'s Reply Br. 2], Doc. 244, at 8.)

1. "General Employment Law Issues"

Upon review of the hours Defendant has identified as excessive "research on general employment law issues," (Ex. A to Def.'s Objections, Doc. 234-2, at 21), I find that 3.9 hours were spent researching damages to prepare to make a settlement demand and later to prepare for trial; eight (8) hours were identified as reviewing "recent" caselaw on employer liability for acts outside the workplace, specific issues under the PHRA, and preparing the points for charge; and 5.7 hours were spent researching issues specific to this case.  I am not convinced that any of this research was of such a general nature as to be non-compensable or that it was otherwise excessive, redundant, or unnecessary.

2. Other Research Challenged as Unreasonable

Defendant also challenges the following categories of charges as unreasonable general research: 11.6 hours of research on recent caselaw on sexual harassment; 12.9 hours on recent caselaw on age discrimination, including wilful misconduct under the

ADEA; 4.6 hours on age, sex, and general "discrimination" under the PHRA; 5.8 hours on the PHRA's effect on common law claims; 9 hours on jury verdicts and jury trials in age and sex discrimination cases; 4.7 hours on recent case law about damages under Title VII; 4.1 hours on recent case law regarding damages under the ADEA; 11.8 hours on damages under the PHRA; 7.7 hours on the admissibility of handbooks after Plaintiff's termination; 0.9 hours on an employer's vicarious liability for a superior's actions; and 0.7 hours on the definition of subsequent remedial actions; and 6.3 hours on the intersection of Plaintiff's EEOC claim with the instant case, including research on the effect of notice to the EEOC, admissibility of EEOC letters, and whether Plaintiff was bound by statements made in her EEOC complaint.  Though this research is somewhat general in nature, it is not so general, or so redundant, as to be non-compensable.  For instance, many of these fees are for research on "recent" caselaw, something even an experienced attorney with a strong background in the field would be remiss not to do during litigation.

Defendant also challenges as unreasonable a number of fee submissions that are for relatively brief amounts of time researching discrete issues that are specific to this case: 9.2 hours researching whether Dr. Sheris, Plaintiff's doctor, can qualify as an expert; 7.5 hours spent responding to Defendant's brief in opposition to Plaintiff's motion to compel; 6.5 hours of research regarding Plaintiff's questioning at her deposition about the attempted sexual assault she alleged and the discoverability of her rape counseling sessions; and 4.2 hours regarding the use of evidence of Laubach's conviction in the instant case.  These submissions are likewise not unreasonable.

     3. <u>Exclusivity of Worker's Compensation Proceeding</u>

Plaintiff submitted three thousand, two hundred seventy-eight dollars ($3278.00) in charges, representing 23.7 hours of research, on a single issue: whether a worker's compensation case provided an exclusive remedy, precluding a discrimination case based on the same underlying events.  Defendant argues that this amount of time is excessive, particularly for experienced employment law attorneys.  I agree.  The amount of time spent on this single issue demonstrates that some of the entries in this category - which span a time frame between February and June of 2001, are redundant.

Eight (8) hours is a reasonable amount of time in which this issue could have been researched.  As the work on this case was divided evenly between a law clerk, Robert Malzel, whose hourly rate is ninety dollars ($90) and Attorney Michael Misher, whose rate is one hundred eighty dollars ($180), with Attorney Toddy contributing less than a half hour of work, I will award half of the eight (8) compensable hours at the ninety dollar ($90) rate and half at the one hundred eighty dollar ($180) rate, for a total charge of one thousand and eighty dollars ($1080.00).  The difference between requested fees and allowable fees, two thousand, one hundred ninety-eight dollars ($2198.00), will therefore be subtracted from Plaintiff's requested award.

     4. <u>Post-Trial "General Legal Research"</u>

Defendant argues that some of the forty-eight thousand, two hundred fifteen dollars and fifty cents ($48,215.50) in legal fees that Plaintiff claims for post-trial work are unreasonable.  (Def.'s Objections, Doc. 234-1, at 10; Ex. A to Def.'s Objections, Doc., 234-2, at 29-32; *see also* Ex. C to  Supp. Pet., Doc. 231-1, at 25.)  Many of Plaintiff's challenged post-trial fee submissions involve unsuccessful claims and are addressed

later in this opinion.  The remaining post-trial submissions that Defendant has challenged include: one hundred ninety-eight dollars ($198.00) spent securing extensions of time from the Court; and twenty-seven dollars and fifty cents ($27.50) corresponding with opposing counsel.  Defendant has not demonstrated that these charges are not excessive or unnecessary.

## B. Fees on Fees

Finally, Plaintiff's petition includes seven hundred ninety-five dollars ($795.00), representing 5.3 hours of research, prior to trial, regarding the recovery attorneys' fees and costs of experts.  Plaintiff's petition also includes charges totaling six thousand, four hundred seventy-one dollars ($6471.00), representing 33.225 hours of work, post trial, that was spent preparing the petitions for attorneys' fees and costs.  These hours were unreasonable, Defendant argues, because  "[e]very attorney successfully litigating employment cases is not only familiar with the post-trial process of fees and costs submissions, but has the brief in support and requisite affidavits on disk or CD-Rom.  The only unique aspect of the motion is the secretarial duty of printing out the time and costs in pursuing that particular case."  (Def.'s Objections, Doc. 234-1, at 10.)  Further, research on attorneys' fees and costs is "all part of establishing and maintaining credibility as an employment law attorney billing $275 per hour."  (*Id.* at 8-9.)

Reasonable attorney's fees expended in litigating a fee petition are recoverable. *See Planned Parenthood of Cent. N.J. v. Attorney Gen. of State of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002); *Pawlak v. Greenawalt*, 713 F.2d 972, 983-84 (3d Cir. 1983).

However, "[t]he Supreme Court has cautioned that fee applications should not devolve into a second litigation." *Moore v. Susquehanna Area Reg'l Airport Auth.*, No. 1:02-CV-0535, 2005 WL 24307090, at *20 (M.D. Pa. Sept. 30, 2005) (citing *Hensley*, 461 U.S. at 437). Where a court finds that the number of hours charged are excessive, the court may reduce the number of hours claimed to reflect a reasonable amount of time. *See Good Timez, Inc. v. Phoenix Fire & Marine Ins. Co.*, 754 F. Supp. 459, 464 (D.V.I. 1991). Plaintiff points to *Cipriani v. Lycoming County Hous. Auth.*, 2001 U.S. Dist. LEXIS 25023, at *38 (M.D. Pa. June 26, 2001), in which the court found, although there were no objections to the amount of time, that forty-four (44) hours was a reasonable amount of time for preparing a fee petition.

Of the approximately thirty-three hours devoted to Plaintiff's fee petition, only 4.4 hours could possibly be characterized as "general legal research"; these involved research of the relevant community, reading two cases about attorneys' fees, and researching the necessity of adjudication on the merits for an award of attorneys' fees. (Ex. C to Supp. Pet., Doc. 231-1.) An additional 1.1 hours were spent on calls to chambers and research into the issue of whether and when to submit billing records in support of the petition. (*Id.*) And an additional half hour was spent on research for an upcoming evidentiary hearing on attorneys' fees. (*Id.*) Defendants have not demonstrated that this amount of time was excessive or unnecessary.

Of the remainder of the time spent on fees, 4.6 hours were spent preparing that factual support, including attorney verifications and declarations. (*Id.*) The approximately twenty-two other hours were expended drafting and editing the petition, responding to

13

Defendant's objections, and responding to Defendant's request for an evidentiary hearing on the petition.  Defendants have not met their burden of demonstrating that these hours were excessive or unnecessary.

### III. Apportionment by Extent of Success

The initial lodestar figure, the product of reasonable hours times a reasonable rate, is only the presumptively reasonable fee.  It does not end the inquiry, particularly where, as here, Plaintiff succeeded on only some of her claims.  *Hensley*, 461 U.S. at 434.  In these situations, a court must address two (2) additional questions.  "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?"  *Id.*  If so, that is, if the successful and unsuccessful claims were based on different facts and legal theories, then "the court can reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed and that were distinct in all respects from claims on which the party did succeed."  *Rode*, 892 F.2d at 1183 (internal quotation marks and citation omitted).  In eliminating hours spent on distinct and unsuccessful claims, the parties bear the same burdens as then do when eliminating hours that were excessive, redundant, or otherwise unnecessary.  *See Clarke v. Whitney*, 3 F. Supp. 2d 631, 634-35 (3d Cir. 1991).

After all hours spent on unrelated, unsuccessful claims, if any, have been subtracted from the lodestar, the resulting figure represents time spent on claims that "involve a common core of facts or [are] based on related legal theories."  *Hensley*, 461 U.S. at 435.  In these situations, when "[m]uch of counsel's time [is] devoted generally to

14

the litigation as a whole" and it is "difficult to divide the hours expended on a claim-by-claim basis," the court must proceed to the second question: "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"  *Id.* at 434-35.  At times, the answer will be yes, for instance when the plaintiff "has obtained excellent results" even though he "failed to prevail on every contention raised in the lawsuit," or when he achieved his desired outcome without succeeding on every alternative legal ground for that outcome which he raised.  *Id.* at 435.  But, the *Hensley* Court cautioned, sometimes the answer will be no: When a plaintiff "has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  *This will be true even where the plaintiff's claims were interrelated*, nonfrivolous, and raised in good faith."  *Id.* at 436 (emphasis added).  Thus, the lodestar must be adjusted to account "for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims."  *Rode*, 892 F.2d at 1183.

How to accomplish this adjustment is left to the discretion of district courts. *Hensley*, 461 U.S. at 436-37.  "There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."  *Id.* This discretion simply "must be exercised in light of the considerations we have identified [throughout the *Hensley* opinion]."  *Id.* at 437.

15

## A. Relatedness and Apportionment: Other Claims Within this Case

Defendant argues that the following matters in this case are unrelated to Plaintiff's successful ADEA and PHRA claims and the time spent on these matters should be deducted from the lodestar figure: (1) the Title VII sexual harassment claim against PAEMS; (2) claims against Garry Laubach, Plaintiff's former supervisor, for intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and assault and battery, as well as the loss of consortium claim brought against Laubach by Plaintiff's husband Charles Watcher, all of which Plaintiff voluntarily withdrew on the morning of trial; (3) medical testimony for both Plaintiff's sexual harassment claim and former Plaintiff Charles Watcher's loss of consortium claim; (4) the claim for wage damages; and (5) post-trial work on claims or issues on which Plaintiff was unsuccessful.

### 1. Sex Discrimination Claims

As both the age and sex discrimination claims pervade the entire case, it is logical to begin by addressing, with regard to these claims, the first *Hensly* question: are the claims unrelated?  More precisely, do they lack a common core of facts or common legal theories such that the time expended on them can be separated on an hour-by-hour basis?  In *Kraemer v. Franklin & Marshall College*, No. Civ. A. 95-0020, 1997 WL 89122, at *2 (E.D. Pa. Feb. 28, 1997), the plaintiff prevailed on an age discrimination claim but lost on a sex discrimination claim, just as Ms. Watcher did.  The court there concluded that the time pursuing the unsuccessful claim "was not related to the success of plaintiff's age discrimination claim."  *Id.* at *2.  It reached this conclusion because it found that even though the elements comprising both causes of action are "quite similar," "the factual

16

bases underlying those claims were widely divergent in this case." *Id.* at *2-3.  For example, "the lines of inquiry at depositions and upon examination at trial were aimed at distinct factual matrices involving different actors and supported by the testimony of different witnesses." *Id.* at *3.  The plaintiff in *Kraemer* relied mostly on statistical evidence for her sex discrimination claim, but for the age discrimination claim, she relied heavily on testimony about "an age discriminatory statement." *Id.*

Even so, with the two (2) discrimination claims based on distinct events, distinct types of evidence, and distinct actors, the court still found that it could not "disaggregate with any precision the hours Plaintiff's counsel spent in discovery and at trial on the successful and unsuccessful claims." *Id.*  The court decided instead to reduce the award by fifty percent (50%) to account for the plaintiff's limited success. *Id.*  In the case before the Court today, it would be even more difficult to disaggregate the hours spent on the sex and age discrimination claims.  To be sure, part of the factual basis for the sex discrimination claim, the sexual assault outside of the workplace, is unique to that claim.  But, both the sex and age discrimination claims were also based on harassing comments and offensive memos and faxes, all which were sexist or ageist or both, that Laubach and another supervisor, Pat Halye, directed at Plaintiff at work.  Here, the events, actors, and types of evidence proffered in support of each claim overlap.  Although disaggregation is possible in Plaintiff's Exhibit C, the fee petition representing post-trial work, many of the attorney hours submitted in Plaintiff's Exhibit B, for work before and during the trial, equally to both sex and age discrimination claims.  Accordingly, like the *Kraemer* court, I cannot disaggregate with any precision the hours in Exhibit B devoted to the successful

17

age discrimination claims from the unsuccessful sex discrimination claims.

Turning to the second *Hensley* question, I find that Plaintiff did not "achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." 461 U.S. at 434-35.  Although Plaintiff's claims were related, she achieved only limited success.  Moreover, although Plaintiff states that she succeeded on two (2) of the three (3) claims tried, the more accurate statement of the extent of her success focuses on the substance of those claims: she successfully proved age discrimination under the ADEA and the PHRA but failed to prove sex discrimination claim under Title VII and the PHRA.  Put otherwise, the extent of her success in claims against PAEMS was roughly fifty percent (50%).  For this reason, the lodestar figure representing hours reasonably extended on the litigation as a whole would be an excessive amount, and I will exercise my discretion under *Hensley* to adjust, by fifty percent (50%), the lodestar figure for fees requested in Plaintiff's Exhibit B to reflect Plaintiff's level of success.

      2. Claims Against Garry Laubach

"A defendant should not 'be required to compensate a plaintiff for attorney hours devoted to the case against other defendants ... who are found not to be liable.' However, attorney hours 'fairly devoted' to one defendant that also support the claims against other defendants are compensable."  *Rode*, 892 F.2d at 1185 (quoting *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1214 (3d Cir. 1978)).  In other words, "hours chargeable to the claims against defendants who are found not liable are chargeable to defendants against whom plaintiff prevailed if plaintiff can establish that such hours were fairly devoted to the prosecution of the claims against the defendants

over whom plaintiff prevailed."  *Id.* (affirming district court's conclusion that hours devoted to motion to dismiss Governor and Attorney General as defendants were "sufficiently separable from the rest of the litigation to warrant a deduction").

Plaintiff argues that the hours devoted to the claims against Mr. Laubach were fairly devoted to the prosecution of her successful age claims against PAEMS.  To this end, she argues that the hostile work environment claims on which she succeeded must be evaluated by looking at "all the circumstances" and that it was Laubach's behavior, such as making repeated comments about Plaintiff's age and urging Plaintiff to retire, and Defendant PAEMS's acceptance of such behavior from Laubach and another supervisor, that formed the basis of her age discrimination claims.  (Pl.'s Reply Br. in Response to Def.'s Br. In Response to Pl.'s Pet. for Attorneys' Fees and Costs, [hereinafter "Pl.'s Reply Br. 1"], Doc. 173, at 10 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 122 S. Ct. 2061, 2074 (2002); Mem. & Order, May 1, 2002, Doc. 73, at 18).  She points out that Defendant PAEMS called Laubach to testify at trial to defend against both the age and sex claims, so "all efforts regarding claims against Laubach were equally utilized in the case presented to the jury."  (Pl.'s Reply Br. 2, Doc. 244, at 12; Pl.'s Reply Br. 1, Doc. 173, at 5, 10.)  Therefore, she argues, "the claims against Laubach did not increase, at all, the amount of billing."  (Pl.'s Reply Br. 2, Doc. 244, at 10.)  Finally, Plaintiff argues, "the claims released against Laubach are irrelevant because that was part of Plaintiff's trial strategy."

To begin, although Plaintiff withdrew these claims on her own accord, she nonetheless did not *prevail* on these claims such that she has any right to recover fees or costs because of them.  Accordingly, just as in *Rode*, Plaintiff may recover fees and costs

from PAEMS for work pursuing the Laubach claims only to the extent that such work was "fairly devoted to the prosecution" of her successful age discrimination claims.  *See id.*

Despite Plaintiff's contention that the claims against Laubach related to a common core of facts as her successful claims, (Pl.'s Reply Br. 2, Doc. 244, at 10), the assault and battery claim shared no common core of facts or related legal theories with her successful age discrimination claims.  Time spent prosecuting the assault and battery claim is thus not recoverable from PAEMS; however, neither Plaintiff's or Defendant's submissions reveal any way to segregate time spent on this claim from time spent on other matters involving Laubach.  The Court accepts that the other four (4) claims against Laubach for intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and loss of consortium arise from the same facts that underlie both the sex and age discrimination claims.  Thus, some of the time spent on factual investigation in these claims against Laubach was "fairly devoted to the prosecution" of Plaintiff's successful age claims.  Such time is compensable, however, only if it is both (1) related to factual investigation, discovery, or Laubach's role as a witness in the claims against PAEMS, rather than his role as a defendant, *and* (2) related to age discrimination rather than sex discrimination.

The record allows for the first of these distinctions to be made on an hour-by-hour basis.  After thoroughly reviewing each of the fees related to Laubach that Defendant challenges, I find the following work to be related only to Laubach's role as a defendant in the case and therefore was not fairly devoted to the claims against PAEMS: (a) time expended on case management issues not fairly devoted to the claims against PAEMS, such as entry or withdrawal of appearance for Laubach's attorneys, scheduling matters

20

with those attorneys that would be duplicative if charged to PAEMS, reviewing exhibit and

witness lists Laubach submitted in support of his defense, and attempts to settle the

claims against Laubach; (b) legal research on claims brought only against Laubach; (c)

responding to motions, or opposition briefs to Plaintiff's motions, filed by Laubach; d)

responding to interrogatories and document requests made by Laubach and

communications with his attorneys regarding information they requested; (e)

correspondence with Laubach's attorney concerning the separate, unsuccessful

declaratory judgment action against AAIC; (f) correspondence with Laubach's attorney

concerning Charles Watcher's claim; (g) review and discussion of Laubach real property

records; and (h) communication with Schuylkill County Prison regarding Laubach's

visitors in prison.  These non-compensable charges relating only to Laubach's role as a

Defendant total thirteen thousand, five hundred seventy one dollars ($13,571.00).  This

amount will be subtracted from Plaintiff's requested attorneys' fees.

    With regard to the remaining fee submissions related to Laubach – which deal with

investigation of facts useful in the claims against PAEMS – I find that Defendant has not

met its burden of showing that they were not fairly devoted to the prosecution of the

claims against PAEMS.  These remaining challenged fees do include work on both sex

and age discrimination claims, but these fees will later be subject to the general fifty

percent (50%) reduction to account for Plaintiff's limited success.

    3. Medical Testimony for Sexual Harassment Claim and Charles Watcher's Claim

    As the final attorneys' fee figure will be reduced by fifty percent (50%) to account

for time expended on the sexual harassment claims, I will not now subtract charges for

particular hours expended on those claims.  I will, however, subtract charges expended on

Charles Watcher's loss of consortium claim.  Defendant identifies seven (7) charges, totaling three hundred fifty-five dollars ($355), as expended in relation to medical testimony for Charles Watcher's claim.  (Ex. A to Def.'s Objections, Doc. 234-2, at 8-9.) Upon review of these charges, I find they are related to Charles Watcher's medical records and therefore unrelated to Plaintiff Shirley Watcher's successful claims against PAEMS.  Therefore, three hundred fifty-five dollars ($355) will be subtracted.

4. Wage Damages

In an earlier opinion, I concluded that the jury's award of back pay to Plaintiff was improper as a matter of law because the jury found that Plaintiff was not wrongfully terminated, and I reduced the judgment accordingly.  (*See* Mem. & Order, Oct. 5, 2004, Doc. 225, at 6-8.)   Defendant now seeks to exclude time Plaintiff's counsel spent developing support for that claim to back pay.  (Ex. A to Def.'s Objections, Doc. 243-2, at 13.)  Specifically, Defendant challenges three thousand, three hundred ninety dollars and fifty cents ($3390.50)[1] in fees for time expended obtaining, and gathering information needed for, an expert report on Plaintiff's lost wages by an economist, Frank Corcione, Ph.D.  (*Id.*)  After reviewing the corresponding hours, I find that they were all devoted to proving the amount of Plaintiff's wage loss - an amount that is irrelevant to Plaintiff's successful claims of hostile environment age discrimination under the ADEA and PHRA. Although Plaintiff's lack of success on this wage claim does not mean she is not a

---

[1]

Although Defendant sought to exclude only three thousand, three hundred eighty-eight dollars and fifty cents ($3388.50), it reached this number after mistakenly transcribing a thirty-six dollar ($36.00) charge as a thirty-four dollar ($34) charge.  The accurate amount is thus two dollars ($2.00) greater.

prevailing party with regard to the relevant statutes, the time expended on the ultimately unsuccessful claim that Plaintiff suffered a certain amount of wage damages as a result of discrimination is nonetheless distinct from her successful claims.  And the time spent on this matter can be easily disaggregated from the remainder of the fee petition.  For these reasons, I will reduce Plaintiff's counsel fees by the amount of three thousand, three hundred ninety dollars and fifty cents ($3390.50).

    5. <u>Unsuccessful Post-Trial Work</u>

    Of the forty-eight thousand, two hundred fifteen dollars and fifty cents ($48,215.50) in counsel fees Plaintiff requests for post-trial work, Defendant has challenged the following amounts:  Twelve thousand and one dollar and seventy-five cents ($12,001.75) represents work on Plaintiff's Petition to Mold the Verdict (Doc. 170), which concerned wage and liquidated damages, prejudgment interest, and damages for the tax consequences of a lump sum award.  Another twelve thousand, five hundred eleven dollars and fifty cents ($12,511.50) represents time spent on Plaintiff's Motion for Post-Trial Relief (Doc. 145) in which she moved for judgment notwithstanding the verdict and in the alternative, a new trial, on her sex discrimination claims.  Both these motions were denied by this Court (*see* Docs. 221 & 227), and these denials were upheld on appeal. *See Watcher v. Pottsville Area Emergency Med. Servs., Inc.*, 248 Fed. Appx. 272 (3d Cir. 2007).  An additional eight hundred seventy-nine dollars ($879) was spent pursuing Plaintiff's unsuccessful appeal, and twenty-seven dollars and fifty cents ($27.50) were spent on the previously dismissed claims against Laubach.  Additionally, Defendant identified one thousand, eight hundred sixty dollars ($1860) in fees, representing 12.4 hours that Plaintiff's counsel spent earlier in the litigation process researching the

23

availability and calculation of prejudgment interest.  (*See* Ex. A to Def.'s Objections, Doc. 234-2, at 18; Ex. B to Supp. Pet., Doc. 231-1.)  None of these requested fees will be awarded because they were expended on unsuccessful claims that are easily disaggregated from Plaintiff's successful claims.

Plaintiff's counsel also submitted a request for fees in the amount of  two hundred eighty-three dollars and fifty cents ($283.50), for time spent responding to Defendant PAEMS' post-trial motions.  In those motions, Defendant sought two (2) types of relief: judgment as a matter of law, and an amendment of the judgment, but only an amendment of the judgment was granted to Defendant.  (*See* Mem. & Order, Oct. 5, 2004, Doc. 225.) Plaintiff thus had only limited success in defending against PAEMS' motions for post-trial relief.  For this reason, her requested fees for time spent responding to Defendant's post-trial motions will be reduced by half, that is, by one hundred forty-one dollars and seventy-five cents ($141.75).  Defendant also challenges the one thousand, eight hundred eighteen dollars ($1818) in counsel fees for time spent reading trial transcripts in conjunction with work on various post-trial matters; this time is likewise difficult to disaggregate, but as Plaintiff succeeded on neither her two (2) substantive post-trial motions and was successful in defending against only one (1) of the two (2) forms of post-trial relief that Defendant sought, this fee submission should be reduced to account for her limited success.  Therefore, this charge will be reduced by seventy-five percent (75%), that is, by one thousand, three hundred sixty-three dollars and fifty cents ($1363.50).

Removing the fees devoted to this unsuccessful post-trial work has, in effect, removed time spent post-trial on Plaintiff's sex discrimination claims.  As such, and because the post-trial portion of the fee petition is set apart and easily separated from the

24

rest of the petition, I will not apply the fifty percent (50%) reduction to account for Plaintiff's lack of success on sex discrimination claims to the remaining post-trial fee submissions, which total twenty-one thousand, two hundred ninety dollars and fifty cents ($21,290.50), and which Defendant has not challenged.


**B. Relatedness and Apportionment: Other Litigation**

Defendant also argues that time spent on the following separate cases is unrelated to Plaintiff's successful claims and therefore should be deducted from the lodestar figure: (1) Plaintiff's worker's compensation case, (2) the criminal case against Laubach arising from his alleged sexual assault, and (3) a declaratory judgment action against PAEMS's insurer, AAIC.  (Exs. A & C to Def.'s Objections, Doc. 234-2.)

1. Workers Compensation Case

Plaintiff's worker's compensation claim sought recovery of lost earning power resulting from her hospitalization with chest pain on June 29, 1998, which Plaintiff claimed was caused by the stress of working in a hostile, discriminatory environment.  (Compl., Doc. 1 33; Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Doc. 56, at 32.)  As such, the compensation case was as related to Plaintiff's age discrimination claims as it was to her sex discrimination claims, and neither Plaintiff's nor Defendant's submissions before the court today reveal a way to separate time spent on the age and sex discrimination aspects of the compensation case.  Thus, while time spent prosecuting the worker's compensation case itself is not recoverable here, time spent reviewing aspects of the compensation case for use in the instant case cannot be severed from Plaintiff's fee petition.

Plaintiff argues that her fee petition does not include any time spent pursuing the

compensation claim itself.  Indeed, Plaintiff submitted Exhibit D to her Supplemental Petition to Mold the Verdict, which details the time and costs involved in the workers' compensation case – and which are not included in the instant fee petition – to demonstrate that time spent on the compensation matter was kept separately.  (*See* Doc. 231-2, at 31-88; *see also* Pl.'s Reply Br. 2, Doc. 244, at 8.)  Defendant lists attorneys' time submissions totaling four thousand, six hundred twelve dollars and fifty cents ($4,612.50) that it contends were spent pursuing the compensation claim.  (Ex. B to Def.'s Objections, Doc. 234-2, at 10.)  Plaintiff responds, however, that this time simply reflects research on the extent to which findings and evidence from the worker's compensation case were discoverable and admissible in the instant case.

I find that with the exception of one submission, a forty-eight dollar ($48.00) charge for a November 7, 2000 "meeting with Att Scher regarding status of W.C. case" (Doc. 231-1, at 11), all submissions that Defendant challenges do reflect time Plaintiff's counsel spent preparing for the trial of this case, not pursuing the worker's compensation claim. This includes time reviewing compensation hearing testimony of witnesses who would later testify in the instant case, reviewing Defendant's factual and legal contentions in the compensation case to prepare "liability strategy" in this case, preparing motions to exclude from evidence certain information from the worker's compensation case, and research on whether Plaintiff's compensation claim could serve as a bar to her federal claims.  (*See* Ex. B to Supp. Pet., Doc. 231-1, at 13-84; *see also* Pl.'s Reply Br. 1, Doc. 173, at 4.)  As such, I will subtract only forty-eight dollars ($48) from Plaintiff's fee request in connection with the worker's compensation matter.

### 2. Criminal Case Against Laubach

Defendant challenges seventeen thousand, eight hundred and ten dollars ($17,810.00) in fees as having been spent pursuing her sexual harassment claim through the criminal case.  (*See* Def.'s Objections, Doc. 234-1, at 7; Ex. A to Def.'s Objections, Doc. 234-2, at 11-12.)  Plaintiff contends that any fee submissions related to the criminal case involved only the "issues raised in the course of litigation regarding the discoverability and admissibility of ... the criminal trial findings and evidence."  (Pl.'s Reply Br. 2, Doc. 244, at 9.)  After reviewing the challenged submissions, I agree with Plaintiff that they are not non-compensable by reason of being devoted to a separate matter.

Plaintiff further argues that the criminal trial transcripts were used in the instant case not only in furtherance of her sex discrimination claim, but also to introduce the fact that at the criminal trial, she recanted a "purported admission" that Laubach had always treated her with "dignity and respect."  (Pl.'s Reply Br. 1, Doc. 173, at 5.)  This admission, Plaintiff submits, was used by PAEMS as a defense to both discrimination claims.  Even if Plaintiff were incorrect and time spent in relation to her criminal case were non-compensable because it related to sex, rather than age, claims, I would not subtract the entirety of these fees from Plaintiff's request.  To do so, when all remaining pre-trial fees will be subject to the fifty percent (50%) reduction to account for the distinction between age and sex claims, would result in a double discounting of this time.  Therefore, no fees will be subtracted at this time.

### 3. Declaratory Action Against AAIC

Finally, Plaintiff concedes that the time and costs spent on the AAIC claim are properly excluded.  (Pl.'s Reply Br. 2, Doc. 244, at 7-8.)  Defendant argues only that

Plaintiff does not identify all of the fees for time actually spent on this matter.  (*See* Def.'s Objections, Doc. 234-1, at 8; Ex. A to Def.'s Objections, Doc. 234-2, at 14-16.)  Upon review of Defendant's detailed objections, I find that, with a few exceptions, all charges Defendant identifies involve the separate declaratory judgment action against Defendant's insurer, AAIC.  The exceptions, although they involve Defendant's insurance policies, were incurred in attempts to settle Plaintiff's case against Defendant PEMS rather than in pursuit of the AAIC action.  They are a one hundred sixty-five dollar ($165.00) charge on August 15, 2002 to "Review Insurance policies re formulating demand," and a one hundred thirty-seven dollar and fifty cent ($137.50) charge on August 16, 2002 to "Review PEMS commercial general liability coverage."  (*See* Ex. B to Supp. Pet., Doc. 231-1, at 64-65.)  That this review of Defendant's insurance policies is related to settlement of the case against the Defendant, PAEMS, is underscored by the fact that the docket indicates a telephone conference was held on September 12, 2002, regarding a settlement offer in this case. (*See* Doc. 110.)  Additionally, I conclude that Defendant's list of challenged charges includes a typographical error, in which Defendant transcribed a three hundred ninety-six dollar ($396.00) charge on October 15, 2001 as a three hundred ninety dollar ($390.00) charge.  (*See* Ex. A to Def.'s Objections, Doc. 234-2, at 14; Ex. B to Supp. Pet., Doc. 231-1, at 39.)  Accordingly, the Court calculates the attorneys' fees involving the action against AAIC to total twenty-eight thousand, three hundred fifty-eight dollars and fifty cents ($28,358.50).  Attorneys' fees will be reduced by this non-recoverable amount.

**IV. Calculation of Attorney's Fee Award**

For the reasons set forth above, the following amounts will be subtracted from the four hundred fifty-two thousand, nine hundred fifty-seven dollars ($452,957.00) in fees Plaintiff requested for work done through December 27, 2002: First, two thousand, one hundred ninety-eight dollars ($2198) will be subtracted to account for hours unreasonably expended.  Second, a total of forty-four thousand, one hundred ninety-two dollars and fifty cents ($44,192.50) will be subtracted as having been expended on unrelated, unsuccessful claims.  Third, the remaining figure, four hundred and six thousand, five hundred sixty-six dollars and fifty cents ($406,566.50) will be reduced by fifty percent (50%) to account for Plaintiff's success on only her age discrimination, but not her sex discrimination claims.  Thus, Plaintiff will be awarded two hundred and three thousand, two hundred eighty-three dollars and twenty-five cents ($203,283.25) in attorneys' fees for work done through December 27, 2002.

Also for the reasons set forth above, a total of twenty six thousand, nine hundred twenty-five dollars ($26,925.00), expended on unsuccessful post-trial work, will be subtracted from the forty-eight thousand, two hundred fifteen dollars and fifty cents ($48,215.50) that Plaintiff requested for work done after the trial.  Thus, Plaintiff will be awarded twenty-one thousand, two hundred ninety dollars and fifty cents ($21,290.50) in attorneys' fees for work done subsequent to December 27, 2002.

Plaintiff's total attorneys' fee award will be two hundred twenty-four thousand, five hundred seventy-three dollars and seventy-five cents ($224,573.75).

**V. Costs**

Plaintiff, a prevailing party under the ADEA and PHRA, is entitled to an award of costs under the ADEA's fee shifting provision, *see* 29 U.S.C. § 626(b) (incorporating by reference 29 U.S.C. § 216(b)), and it is within the Court's discretion to award her costs under the PHRA's fee shifting provision, 43 Pa. Stat. Ann. § 962(c)(4)(c.2).  The costs she may recover "are not limited to the costs taxable under Rule 54(d)(1) and 28 U.S.C. § 1920," because "'prevailing parties in civil rights cases are generally entitled to recover any reasonable costs associated with litigating their claims, provided that the costs are necessary and properly documented.'"  *Petrunich v. Sun Bldg. Sys., Inc.*, No. 3:CV-04-2234, 2008 WL 974574, at *8 (M.D. Pa. Apr. 7, 2008) (quoting *Kratzer v. Wegman's Rest., LLP*, No. Civ. A. 04-5889, 2005 WL 2847320, at *3 (E.D. Pa. Oct. 27, 2005)).

**A. Requested Amount**

In her original Petition for Attorneys' Fees and Costs (Doc. 171), submitted January 8, 2003, Plaintiff included the "Affidavit of Joseph M. Toddy, Esquire, Re: Costs," which listed thirty-eight thousand, one hundred eleven dollars and twenty-one cents ($38,111.21) in costs.  In her Supplemental Petition to Mold the Verdict Relative to Attorney's Fees and Costs, (Doc. 231-1), submitted October 22, 2004, Plaintiff stated that since filing the original petition, she had incurred additional costs of seven thousand, one hundred ninety-one dollars and ten cents ($7191.10), and thus requested a total of forty-five thousand, three hundred two dollars and thirty-one cents ($45,302.31) in costs.

30

However, Plaintiff also submitted information that contradicts these figures.  With the October 2004 Supplemental Petition, Plaintiff included Exhibit B, her itemization of fees and expenses from 1998 through December 27, 2002.  Although both Exhibit B and Attorney Toddy's January 2003 affidavit regarding costs cover the same time period and some costs appear listed on both documents, Exhibit B contains a much more detailed itemization of expenses, and lists a total of only twenty-six thousand, seven hundred eleven dollars and seventeen cents ($26,711.17) in costs.  Plaintiff also included in her October 2004 Supplemental Petition an Exhibit C, which itemized her fees and expenses from December 28, 2002 to the present.  Contrary to the unsupported statement in the Supplemental Petition that costs incurred since filing the original petition were seven thousand, one hundred ninety-one dollars and ten cents ($7191.10), Exhibit C, which was attached to that same Supplemental Petition, actually lists a larger amount.  Exhibit C itemizes, in detail, an additional thirteen thousand, twenty-three dollars and forty-four cents ($13,023.44) in costs incurred since the beginning of 2003.  The total costs from Exhibits B and C of Plaintiff's Supplemental Petition equal thirty-nine thousand, seven hundred thirty-four dollars and sixty-one cents ($39,734.61).

The record before the Court today does not explain these contradictions, but because the incomplete overlap between Exhibit B and the original affidavit of costs makes it nearly impossible to work from both documents, because Exhibits B and C are the most detailed, and the most recent, documentation of expenses that Plaintiff has provided to the Court, and because Plaintiff's Supplemental Petition represents these records to be complete, (*see* Supp. Pet., Doc. 231-1, ¶¶ 5-6), I will consider only those cost submissions itemized in Exhibits B and C to the Supplemental Petition.

31

**B. Defendant's Objections to Costs in Exhibit B**

1. Costs Involving Claims Against Laubach

Defendant's objections to Plaintiff's request for costs are as follows: Defendant argues that it should not have to pay a seventy-five dollar ($75.00) fee for the medical report of Dr. Allan Rodgers, who was Garry Laubach's treating psychologist.  According to Plaintiff, "[t]hese records were relevant to determine whether Garry Laubach made any admission with regard to Plaintiff's claims."  (Pl.'s Reply Br. 1, Doc. 173, at 9.)  As such, this cost was not incurred in the prosecution of Plaintiff's successful claims against PAEMS.  Defendant argues also that it should have to pay only half of the one hundred and fifty dollar ($150.00) fee for filing the Complaint and the forty-eight dollar ($48.00) fee for serving the Complaint, because Defendant was only one of two (2) defendants sued. "The general rule in this circuit and others is that a district court, in exercising its equitable discretion, may apportion costs between the prevailing and non-prevailing parties as it sees fit.  This power ... includes the power to divide costs among the losing and winning parties in a case involving multiple defendants and plaintiffs..."  *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 469 (3d Cir. 2000); *see also Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir. 1996) (internal quotation marks omitted) (When multiple defendants are sued in a civil rights action, "each defendant must bear the prevailing plaintiff's fees for time spent on matters clearly related to the claims made against that defendant.").  Therefore, Defendant's above objections have merit, and costs will accordingly be reduced by one hundred seventy-four dollars ($174.00).

2. <u>Costs Involving Claims Against AAIC</u>

Second, Plaintiff concedes that costs associated with her separate action against AAIC are not recoverable, but she does not concede all of the costs in fact associated with that claim.  Thus, not only will the four hundred thirty-seven dollar and twenty-five cent ($437.25) cost of Carl Raring's deposition be subtracted, but so will the one hundred fifty dollar ($150.00) fee for filing the Complaint in that action on March 19, 2002, and the one hundred fifty dollar ($150.00) fee for filing the appeal, on July 31, 2002, of the motion to dismiss in that action.

3. <u>Witness Fees</u>

Third, Defendant objects to witness fees and mileage for the following witnesses who were not called at trial: John Blum, Steve Bobella, Tammy Gradwell, Ed Nolter, Allan P. Rodgers, Ed. D., Linda M. Scott, Julie Ebert, Stephane Barron, and Ana Tray.  (Ex. C to Def.'s Objections, Doc,. 234-2, at 25.)  Local Rule of Court 54.4 provides that witness "fees are taxable even though the witness does not take the stand *provided the witness necessarily attends the court*." (emphasis added).  In a case also awarding costs pursuant to the ADEA and PHRA, the United States District Court for the Middle District of Pennsylvania, pursuant to this local rule, disallowed recovery of a fee for a non-testifying witness because the plaintiff there did not submit an affidavit verifying that the witness actually attended the trial.  *Petrunich*, 2008 WL 975574, at *9.  Likewise, as Plaintiff has not submitted affidavits verifying that these witnesses "necessarily attend[ed]" the court, these fees are not recoverable.  Exhibit B lists three hundred twenty dollars ($320.00) in witness fees for Blum, Bobella, Gradwell, Rodgers, Scott, Ebert, and Barron, but lists neither witness fees for Ana Tray nor mileage expenses for any of these witnesses.

Accordingly, three hundred twenty dollars ($320.00) will be subtracted from taxable costs.

### 4. Costs Unrelated to Successful Age Discrimination Claims

Fourth, Defendant identifies a number of costs that it says are related solely to Plaintiff's unsuccessful sex discrimination claim.  Such costs will be disallowed because costs are apportioned between successful and unsuccessful claims just as attorneys' fees are.  *See Jama Corp. v. Gupta*, Nos. 3:99-CV-1624, 3:99-CV-1574, 2008 WL 108671, at *3 (M.D. Pa. Jan. 4, 2008).  Defendant claims that Brenda Bauer and Walt Bauer testified "solely on issues relative to plaintiff's sex discrimination claim."  (Ex. B to Def.'s Objections. Doc. 234-2, at 25.)  Plaintiff does not contest this allegation; thus, the eighty dollars ($80.00) in witness fees for these witnesses will be subtracted from taxable costs. Defendant also contests costs of obtaining transcripts of Laubach's criminal trail.  For reasons discussed earlier in this opinion, information from the criminal trial was relevant to only the sex discrimination claim in the instant case, so these costs are not recoverable. However, these costs do not appear in Exhibit B to Plaintiff's Supplemental Petition, so there is no need to subtract them.

Defendant also challenged a twenty-five dollar ($25.00) charge for the subpoena of police records from the Pottsville Bureau of Police and a seven dollar and forty-eight cent ($7.48) charge for "cost of VHS tapes."  Because Plaintiff has not contested Defendant's characterization of these expenses as related only to her sex discrimination claims, these costs will not be allowed.

Defendant challenges expenses for the expert report of, and overnight shipments to, Frank Corcione, Ph.D., who testified regarding Plaintiff's unsuccessful claim to recover lost wages.  As discussed earlier in this opinion, any testimony by Dr. Corcione is

irrelevant to Plaintiff's successful claims of hostile environment age discrimination under the ADEA and PHRA, and the costs related to that testimony and report are not taxable. Accordingly, I will disallow the one thousand, six hundred seventy-five dollar ($1675.00) cost of the report, and two charges for overnight shipments to Dr. Corcione, totaling twenty-four dollars and thirteen cents ($24.13).   Although Defendants also challenged a witness fee for Dr. Corcione, this fee is not included in Exhibit B and thus need not be subtracted.

5. Costs Sufficiently Related to Age Discrimination Claims to be Recovered

Defendant also objects to the costs of a medical report from Dr. Joseph Sheris, Plaintiff's doctor; medical records from Dr. Sheris; medical records from Dr. Ralph Mazzochetti, another of Plaintiff's doctors; overnight shipments to Drs. Sheris and Mazzochetti; and medical records obtained from Integrated Medical Group.   These costs total four hundred fifty-four dollars and fifty-one cents ($454.51).   Dr. Sheris testified regarding Plaintiff's psychological injuries and Dr. Ralph Mazzochetti testified regarding her physical and mental injuries.   (*See* Pl.'s Pretrial Mem., Doc. 100, at 6.)   Although Defendant argues that these costs are related only to Plaintiff's sex discrimination claims, these witnesses testified generally as to damages; indeed, Plaintiff was awarded damages for emotional pain and suffering caused by age discrimination.   These witnesses had previously testified in Plaintiff's worker's compensation case, which, as noted above, sought recovery for Plaintiff's hospitalization with chest pain that was allegedly caused by the stress of working in an environment that was hostile and discriminatory on the basis of both age and sex.   These costs, therefore, will be allowed.

Defendant objected to a two hundred fifty-eight dollar and fifty cent ($258.50) charge for the deposition of Detective Eugene Tray and a ten dollar ($10.00) charge for "PFA history for Detective Tray," as related only to the sex discrimination claims.  Plaintiff responds, however, that Detective Tray's testimony that Plaintiff and Laubach had a good working relationship, lacking in any "inappropriate behavior (sexual and age based) at Defendant's place of business" was relevant to both of Plaintiff's discrimination claims, and to her credibility generally.  (Pl.'s Reply Br. 1, Doc. 173, at 4-5.)  For these reasons, I will allow the costs related to Detective Tray.

6. <u>Attorney Travel and Related Expenses</u>

Defendant also objects to travel expenses of Plaintiff's counsel as "inflated, unnecessary and unreasonable" and also without "apparent justification."  (Ex. B to Def.'s Objections, Doc, 234-2, at 26.)  Exhibit B to Plaintiff's Supplemental Petition contains itemized costs for travel, including mileage, tolls, parking, food, and hotel expenses for Attorney Toddy, Attorney Misher, and Attorney Sergent, totaling three thousand, three hundred eighty-two dollars and seventy-nine cents ($3382.79).  Each of the listed travel charges identifies the purpose of the travel, such as to attend depositions, a settlement conference, pretrial conferences, or trial; almost every charge lists the destination to which the attorney traveled; and some, but not all, of the charges are broken down into the amount spent on tolls, parking, mileage, etc.  (*See* Ex. B to Supp. Pet., Doc. 231-1.)

The cost of attorney travel to depositions and similar events is "routinely allowed" by district courts within this circuit.  *See Bowers v. Foto-Wear, Inc.*, No. 3:CV-03-1137, 2007 WL 4086339, at *5 (M.D. Pa. Nov. 15, 2007) (approving attorney travel expenses to attend depositions based on a simple listing of the cost of traveling to each deposition,

without requiring receipts or invoices).  So is the cost of parking.  *See Petrunich* 2008 WL 974574, at *9.  Hotel costs for attorneys may also be reimbursed in civil rights actions. *See Leipziger v. Twp. of Falls*, No. Civ. A. 00-1147, 2001 WL 1167488, at *1 (E.D. Pa. July 31, 2001); *see also In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (in class action case, where, like in civil rights cases, "expenses that were adequately documented and reasonably and appropriately incurred" were recoverable, approving "thousands of dollars in expenses," including "dining, hotel, and transportation expenses incidental to out-of-town travel").  Although the court in *Safety Components* allowed food costs to be reimbursed, the court in *Becker v. ARCO Chem. Co.*, held that costs of attorney meals may not be reimbursed when the attorney has not documented these expenses by submitting supporting receipts, and expressed doubt about the propriety of reimbursing such expenses for local counsel, even with receipts.  15 F. Supp. 2d 621, 637 (E.D. Pa. 1998).  Here, the expenses for food, which are not supported by receipts, are lumped in with other expenses.  Attorney Misher lists forty-seven dollars ($47) for "parking and food expenses" on February 8, 2002, and two hundred forty-eight dollars and twenty-two cents ($248.22) for "travel and dinner expenses during week long trial in Pottsville, PA."  Attorney Toddy also lists one thousand, eight hundred thirty-seven dollars and nine cents ($1837.09) for "travel, hotel, and expenses or week of trial;" food may or may not be one of the expenses to which this entry refers. Because it is Plaintiff's burden to demonstrate, with sufficiently specific documentation, that expenses are reasonable, I will disallow ten percent (10%) of these three charges, or two hundred thirteen dollars and twenty-three cents ($213.23) as undocumented food expenses.  The remaining travel-related expenses, however, are sufficiently documented

and not unreasonable.

### 7. Copying Expenses

Another cost among those Defendant challenges as "inflated, unnecessary and unreasonable" is a "copier expense @ 0.20 per copy" of seven thousand, thirty dollar and eighty cent ($7030.80).  The Third Circuit Court of Appeals in *Interfaith Cmty. Org. v. Honeywell Intern., Inc.*, remanded on the case for reconsideration of various costs, one of which was copying costs.  426 F.3d 694, 717 (3d Cir. 2005).  The court had "serious concerns about the District Court's decision to grant ICO reimbursement at the rate of 20 cents per page," noting that the Court of Appeals itself, under its local rules, taxed copying costs at ten (10) cents per page and taking judicial notice of the fact that "Fed Ex/Kinko's charges less than 7 cents per page for large volume copying."  *Id.*  Similarly, in *Becker*, the court allowed reimbursement for copying costs where the prevailing party specified the number of pages copied, but the court did not allow reimbursement at the requested rate of fifteen (15) cents per page; instead, it reduced the rate to (10) cents per page.  15 F. Supp. 2d at 635-36.  In light of these decisions, Plaintiff's copier expense will be reduced by fifty percent (50%) to reflect a reasonable rate of ten (10) cents per copy.  Thus, three thousand, five hundred fifteen dollars and forty cents ($3515.40) will be subtracted from Plaintiff's requested costs.

### 8. Apportionment

I find that the other costs in Exhibit B to which Defendant objects, including the costs for computer assisted legal research, telephone, and shipping charges, are reasonable and sufficiently documented.  Thus, after making the subtractions noted above from the total expenses Plaintiff requested in Exhibit B, nineteen thousand, nine hundred

thirty-nine dollars and sixty-eight cents ($19,939.69) remain.  But I have not yet addressed Defendant's concern that these remaining costs have not been broken down with precision to determine what portion were devoted to Plaintiff's successful claims.  (*See* Ex. B to Def.'s Objections, Doc. 234-2, at 26.)  The concern that Defendant will be made to reimburse Plaintiff for legal research and other costs spent pursuing the sex discrimination claims, declaratory judgment action, claim for wage damages, or claims against Laubach is a valid one.  Accordingly, as attorneys' fees incurred up through the end of 2002 were apportioned by fifty percent (50%) to account for Plaintiff's limited success, so will costs for this portion of the litigation, when those other, unsuccessful claims were being pursued.  Plaintiff will therefore be awarded nine thousand, nine hundred sixty-nine dollars and eighty-four cents ($9969.84) for costs in Exhibit B.

### C. Defendant's Objections to Costs in Exhibit C

Defendant makes only a few objections to the costs in Exhibit C to Plaintiff's Supplemental Petition.  Specifically, it argues that an eighty dollar and twenty-five cent ($80.25) charge on January 13, 2003 for duplicating a video; a four hundred dollar ($400) charge on the same date for the expert testimony of Dr. Sheris; and a two thousand, five hundred dollar ($2500) expert fee for Dr. Mazzachetti on January 28, 2003, are related only to the sex discrimination claim.  Defendant likewise objects to a one thousand, two hundred eighty-seven dollar and fifty-cent ($1287.50) "trial preparation and appearance fee" for Dr. Corcione on January 13, 2003 and two thousand, one hundred sixty-two dollar and fifty cent ($2162.50) charge for "professional services" paid to Dr. Corcione on February 6, 2003 are related only to Plaintiff's unsuccessful wage claim.

Because Plaintiff has not responded with an argument that the video is not related only to the sex discrimination claim and because, as discussed earlier, any charges involving Dr. Corcione are unrelated to Plaintiff's successful claims, all those charges are properly excluded.  The fees for Drs. Sheris and Mazzachetti are, as noted above, related to Plaintiff's successful claims.  The amount of these fees will require some adjustment, though.  "[A]s a general rule, compensation [for expert witnesses] paid in excess of the statutory per diem fee, mileage and subsistence allowance is not taxable as costs." *Becker*, 15 F. Supp. 2d at 636.  "[I]n ADEA cases," however, "the trial court has 'equitable discretion' to award fees beyond the statutory amount where the expert's testimony is indispensable to the determination of the case."  *Id.*  Because it would not be unreasonable to conclude that the damage award Plaintiff received from the jury was related to the testimony of these witnesses, and perhaps most importantly, because Defendant has not objected to the amount of these fees, I will not reduce them to the statutory per diem fee.  I will, however, reduce these fees by fifty percent (50%), as with other costs incurred during and leading up to the trial, to account for Plaintiff's limited success.

In sum, a total of four thousand, nine hundred eighty dollars and twenty-five cents ($4980.25) will be subtracted from Plaintiff's requested expenses in Exhibit C, and Plaintiff will be awarded eight thousand forty-three dollars and nineteen cents ($8043.19) for the costs in Exhibit C.

**CONCLUSION**

For the reasons set forth above, Plaintiff's petitions (Docs. 171 and 231-1) will be granted in part and denied in part.  Plaintiff will be awarded attorneys' fees in the amount of two hundred twenty-four thousand, five hundred seventy-three dollars and seventy-five cents ($224,573.75), and costs in the amount of eighteen thousand thirteen dollars and three cents ($18,013.03).

An appropriate order follows.


 April 28, 2008                                      /s/ A. Richard Caputo
Date                                                 A. Richard Caputo
                                                     United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SHIRLEY WATCHER

    Plaintiff,

          v.

THE POTTSVILLE AREA
EMERGENCY MEDICAL SERVICE,
INC.

    Defendant.

CIVIL ACTION No. 3:00-CV-1123

(JUDGE CAPUTO)

## ORDER

    Now, this  28th  day of April, 2008, it is **HEREBY ORDERED** that Plaintiffs' Petition for attorneys' fees and costs is **GRANTED** in part and **DENIED** in part, as follows:

(1)    Plaintiff is awarded attorneys' fees in the amount of two hundred twenty-four thousand, five hundred seventy-three dollars and seventy-five cents ($224,573.75)

(2)    Plaintiff is awarded costs in the amount of eighteen thousand thirteen dollars and three cents ($18,013.03).

                    /s/ A. Richard Caputo
                    A. Richard Caputo
                    United States District Judge

_____

_____

_____